UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALERIE MORTON,<br><br>               Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>               Defendant. | CASE NO. C14-5468-RSM-MAT<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Valerie Morton proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REVERSED and REMANDED for further administrative proceedings.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION
PAGE - 1

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1960.[1]  (AR 42.)  She graduated from high school and previously worked as a customer service representative.  (AR 29, 43.)

Plaintiff filed applications for DIB and SSI on May 31, 2011, alleging disability beginning December 13, 2009.  (AR 210-23.)  Plaintiff later amended her alleged onset date to August 1, 2011.  (AR 208.)  Her applications were denied at the initial level and on reconsideration.  (AR 135-38, 143-54.)

On November 8, 2012, ALJ Gary Elliott held a hearing, taking testimony from plaintiff and a vocational expert.  (AR 37-62.)  On November 19, 2012, the ALJ issued a decision finding plaintiff not disabled.  (AR 15-36.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on May 6, 2014 (AR 1-5), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 1, 2011.  (AR 20.)  At step two, it must be determined whether a claimant suffers from a severe impairment.  The

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ALJ found osteoarthritis of the knees, obesity, bipolar disorder, personality disorder, and posttraumatic stress disorder to be severe impairments. (AR 20-21.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 21-23.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with some additional limitations. (AR 23.) Plaintiff should avoid concentrated exposure to hazards such as heights or moving machinery. Further, plaintiff can perform simple, routine tasks and instructions or unskilled work with occasional public contact. With that assessment, the ALJ found plaintiff unable to perform her past relevant work as a customer service representative. (AR 29.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such as cleaner, mail clerk, and garment folder. (AR 30.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the

1   ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954
2   (9th Cir. 2002).

3   Plaintiff argues the ALJ erred by: (1) improperly rejecting medical and testimonial
4   evidence regarding plaintiff's mental impairments; (2) improperly evaluating plaintiff's knee
5   impairment; and (3) failing to meet his burden at step five by showing that there were other jobs
6   in the national economy plaintiff could perform. She asks that the ALJ's decision be reversed
7   and her claim remanded for an award of benefits or, in the alternative, for further proceedings.
8   The Commissioner argues the ALJ's decision is supported by substantial evidence and should be
9   affirmed.

10                                    Medical Opinion Evidence

11   In general, more weight should be given to the opinion of a treating physician than to a
12  non-treating physician, and more weight to the opinion of an examining physician than to a non-
13  examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not
14  contradicted by another physician, a treating or examining physician's opinion may be rejected
15  only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396
16  (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be
17  rejected without "'specific and legitimate reasons' supported by substantial evidence in the
18  record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.
19  1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough
20  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and
21  making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881
22  F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own
23  interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v.*

*Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Less weight may be assigned to the opinions of "other sources," such as nurse practitioners. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, the ALJ's decision should reflect consideration of other source opinions, Social Security Ruling (SSR) 06-3p, and the ALJ may discount the evidence by providing reasons germane to each source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cited sources omitted).

While plaintiff here challenges the ALJ's consideration of various medical opinions and other evidence, this Court finds the ALJ erred only with respect to his evaluation of the opinion from Hillary Clark, Psy.D.

A.  <u>Hillary Clark, Psy.D.</u>

Hillary Clark, Psy.D. examined plaintiff on April 11, 2012, on behalf of the Washington State Department of Social and Health Services. (AR 638-44.) Dr. Clark diagnosed plaintiff with bipolar I disorder and post traumatic stress disorder and measured her GAF score at 45. (AR 638.) Dr. Clark noted that plaintiff "exhibits rapid mood cycling that has a significant impact on her ability to participate in a normal workday and workweek without interference from psychological based symptoms." (AR 641.) She also noted that plaintiff is "definitely not able to work at this time and her history of rapid cycling indicates that she may have difficulty remaining stable for a consistent enough period of time for full time employment to be possible in the future." *Id.* Further, Dr. Clark assessed plaintiff's residual capacity finding plaintiff's

> [c]apabilities are dependent on mood state and when she is in a hypomanic or mild manic state she may be able to accomplish tasks, engage in new activities and socially interact with others. When in a depressed state she is capable of completing basic daily activities that are simple and do not require mental energy. She may have the ability to engage in part time employment if her work schedule was flexible and not overly time sensitive.

REPORT AND RECOMMENDATION
PAGE - 5

(AR 641.)

The ALJ gave this opinion little weight finding it not supported by the opinions of Dr. Gollogly, Dr. Fligstein, or Dr. Breen. (AR 27.) The ALJ also found that Dr. Clark did not adequately consider plaintiff's participation in therapy and crafting. *Id.* Finally, the ALJ discredited Dr. Clark's opinion stating that Dr. Clark relied too heavily on claimants reported history, specifically her reported deep depressive episodes. *Id.* Plaintiff argues these were not specific and legitimate reasons to discredit the opinion. This Court agrees.

The ALJ first discredited Dr. Clark's opinion because it was unsupported by other medical opinions. (AR 27.) Defendant argues this was a specific and legitimate reason to discredit the opinion based on *Tonapetyan v. Halter*. Dkt. 13 at 8; 242 F.3d 1144, 1149 (9th Cir. 2001). While the court in *Tonapetyan* found that contrary opinions served as "additional specific and legitimate reasons" to reject another medical opinion, it is clear from the court's analysis that this contradiction alone was insufficient to discredit the opinion. The court's analysis focused on the ALJ's finding that the two discredited opinions were unsupported by treatment records and objective medical findings. *Id.* The contrary opinions provided substantial evidence to support the ALJ's determination and assured the court that the record was fully developed. *Id.* Further, the court noted that "[a]lthough the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Id.*

Additionally, defendant noted in his Responsive Brief that Dr. Clark's opinion was contradicted, thus requiring the ALJ to provide specific and legitimate reasons to reject it. Dkt. 13 at 7-8. It makes little sense to say that the contradiction requires the ALJ to provide specific

REPORT AND RECOMMENDATION
PAGE - 6

and legitimate reasons to reject an opinion, and then say that the contradiction itself is a specific and legitimate reason.  As such, while the consistency of an opinion is a factor to be considered by the ALJ, a contradicting opinion, alone, is not a sufficient reason to discredit an opinion.

The ALJ also discredited Dr. Clark's opinion finding she did not "adequately consider the claimant's participation in therapy and crafting, where the claimant was able to engage in simple tasks despite having unorganized thoughts."  (AR 27.)  A review of Dr. Clark's opinion shows that Dr. Clark was aware that plaintiff was seeing a counselor and attending group therapy and that she also reviewed treatment records from Greater Lakes Mental Healthcare.  (AR 639.)  Dr. Clark clearly considered these factors in rendering her opinion, and the ALJ's statement to the contrary is unsupported by the record.  Further, defendant did not address or defend this reason given by the ALJ.  Dkt. 13 at 7-10.  As such, this is not a specific and legitimate reason to discredit the opinion.

The final reason given by the ALJ to discredit Dr. Clark's opinion also fails.  The ALJ found that "Dr. Clark relied too heavily on the claimant's reported history."  (AR 27.)  Defendant correctly points out that "[a] physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been" discounted properly. *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (*quoting Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (*citing Brawner v. Sec. HHS*, 839 F.2d 432, 433-34 (9th Cir. 1988))).  However, like all findings by the ALJ, a finding that a doctor's opinion is based largely on a claimant's own accounts of his symptoms and limitations must be based on substantial evidence in the record as a whole. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).  It is clear from the record that Dr. Clark relied on multiple factors, other than

REPORT AND RECOMMENDATION
PAGE - 7

plaintiff's self-reports, in rendering her opinion. Dr. Clark performed a mental status examination, reviewed treatment notes from plaintiff's mental health counselor, and noted observing many of plaintiff's symptoms during the examination, including her manic and hypomanic mood, her easy distractibility and poor attention, her accelerated thoughts and flight of ideas, and her anxiety and psychomotor agitation. (AR 638, 639, 642-44.) While Dr. Clark does include plaintiff's own statements in her evaluation, she also provides her professional opinion based on both plaintiff's statements and her own clinical observations and objective testing. The ALJ's finding that Dr. Clark's opinion relied too heavily on plaintiff's subjective reports is not supported by substantial evidence. Thus, the ALJ did not provide specific and legitimate reasons to discredit this opinion.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The court noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)). Dr. Clark opined plaintiff would be unable to sustain full time employment. (AR 641.) Thus, had Dr. Clark's opinion been given full weight, the disability determination would likely have changed. Therefore, the

REPORT AND RECOMMENDATION
PAGE - 8

ALJ's error was not harmless.

B.     Kristi Breen, Ph.D.

Kristi Breen, Ph.D. evaluated plaintiff on May 25, 2011, at the request of the Washington State Department of Social and Health Services. (AR 440-46.) Dr. Breen diagnosed plaintiff with bipolar disorder and cannabis abuse and measured her GAF score at 50. (AR 442.) Dr. Breen opined that plaintiff would have marked limitation in communicating and performing effectively in a work setting with public contact and found her to have moderate limitation in learning new tasks, maintaining appropriate behavior in a work setting, and communicating and performing effectively in a work setting with limited public contact. (AR 442-43.) Dr. Breen also opined that plaintiff would be able to work on her medications and that she is capable of most tasks and would be able to sustain work if she can sustain her behavior. (AR 443.)

The ALJ gave Dr. Breen's opinion significant weight because Dr. Breen had the opportunity to examine plaintiff three months prior to the onset date, she explained the reason for her opinion, and she based her findings on observations she made during the examination. (AR 26.) Further, the ALJ noted the opinion was supported by the opinion of Dr. Gollogly and Dr. Fligstein. *Id.* Plaintiff argues the ALJ erred by giving Dr. Breen's opinion weight, but failing to incorporate all opined limitations into the RFC finding. Dkt. 12 at 14-16. This Court disagrees. The ALJ limited plaintiff to simple, routine tasks and instructions or unskilled work and to occasional public contact. (AR 23.) Plaintiff first argues this does not account for plaintiff's mood swings. Dkt. 12 at 16. However, plaintiff fails to explain what further functional limitation would be warranted due to mood swings. Further, Dr. Breen did not identify mood swings as a symptom she observed during the evaluation. As such, this argument fails.

Plaintiff also argues the ALJ failed to incorporate limitations related to plaintiff's contact

with supervisors or co-workers. Dkt. 12 at 16. Again, plaintiff fails to identify what limitations would be warranted. Dr. Breen did not render an opinion directly related to plaintiff's ability to interact with supervisors and co-workers. In fact, the only limitation that could pertain to this functional area would be Dr. Breen's opinion regarding plaintiff's ability to perform routine tasks without undue supervision, and she opined plaintiff would have no limitation in this area. (AR 443.)

An ALJ's findings need only be consistent with a doctor's opined limitations, not identical to them. *See Turner v. Comm'r of the Soc. Sec. Admin.,* 613 F.3d 1217, 1223-24 (9th Cir. 2010) (finding the ALJ did not need to provide any reason for rejecting the opinion of a treating source because the ALJ incorporated that source's observations in the RFC finding). The ALJ adequately accounted for Dr. Breen's opinion in his RFC finding. Thus, the ALJ did not commit error.

C.   Tina Siridakis, ARNP

Tina Siridakis, ARNP completed a medical opinion form regarding plaintiff's functioning on April 5, 2012. (AR 615-16.) She opined that plaintiff would be unable to engage in simple repetitive or other work due to her severe depression, irritability, and fluctuating moods. (AR 615.) She also noted that plaintiff would likely miss more than three days of work per month due to her mental health impairments. (AR 616.)

The ALJ gave this opinion little weight finding Ms. Siridakis improperly relied on plaintiff's "difficulty with college level courses and customer service work" in making her opinion. (AR 28.) The ALJ also noted the opinion was not supported by the opinions of Dr. Fligstein, Dr. Gollogly, and Dr. Breen. *Id.* Finally, the ALJ found the opinion inconsistent with Dr. Siridakis' own observations. *Id.* Plaintiff argues these were not germane reasons to discredit

the opinion. This Court again disagrees.

The ALJ found Ms. Siridakis relied too heavily on plaintiff's inability to complete college classes or perform her past work. (AR 28.) While Ms. Siridakis does not mention anything about plaintiff's difficulty with college courses or her past work as part of the March 26, 2012 letter (AR 615-16), Ms. Siridakis did mention plaintiff's difficulty with school and past work in a previous letter. (AR 593.) It is not clear whether Ms. Siridakis continued to rely on plaintiff's difficulty with college courses and customer service work as a basis for her latter opinion. Regardless, the ALJ provided another germane reason in evaluating Ms. Siridakis' opinion.

The ALJ found Ms. Siridakis' opinion inconsistent with the opinions of Dr. Fligstein, Dr. Gollogly, and Dr. Breen, all of which were given significant weight by the ALJ. (AR 26-28.) All of these doctors opined plaintiff could perform simple routine work on a regular and continuous basis. As such, this inconsistency was a germane reason to discredit Ms. Siridakis' opinion. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (An ALJ may discount lay testimony that "conflicts with medical evidence") (*citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *Baylis v. Barnhart*, 427 F.3d 1244. 1218 (9th Cir. 2005) ("Inconsistency with medical evidence" is a germane reason for discrediting lay testimony) (*citing Lewis, supra*, 236 F.3d at 511).

The ALJ also found Ms. Siridakis' opinion inconsistent with her own objective findings. (AR 28.) Ms. Siridakis' evaluated plaintiff on the day she completed the medical opinion. (AR 623.) She noted plaintiff's memory, attention span, and concentration were intact. *Id.* The ALJ reasonably interpreted these normal findings as inconsistent with the opinion that plaintiff would be unable to perform even simple routine tasks. This was a germane reason to discredit Ms.

REPORT AND RECOMMENDATION
PAGE - 11

Siridakis' opinion. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ need not accept opinion of treating physician if it is inadequately supported by clinical findings). Thus, the ALJ did not err in evaluating Ms. Siridakis' opinion.

D.      Nikki Rymer, MA

Nikki Rymer, MA, completed a medical source statement regarding plaintiff on September 1, 2011. (AR 608-10.) She opined plaintiff would be markedly limited in the ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruption from symptoms; accept instruction and respond appropriately to criticism from supervisors; get along with co-workers without unduly distracting them or exhibiting behavioral extremes; and set realistic goals. (AR 609.) Ms. Rymer went on to state, "I am unable to assess her work habits but completed the form with my client. Based on her report and her stability, I would state she is unable to work at this time. The client reports several psychological, cognitive, and physiological symptoms that prohibit effective work stability." (AR 610.) Ms. Rymer also wrote a letter in July 2012 stating that plaintiff was unable to ride the bus due to her anxiety and difficulty dealing with the public. (AR 620.)

The ALJ gave these opinions little weight finding them based in large part of plaintiff's reported symptoms and unsupported by mental status examinations. (AR 28.) The ALJ further pointed out that they were not supported by the opinions of Dr. Fligstein, Dr. Gollogly, and Dr. Breen and that Ms. Rymer filled out a check box form providing little basis for her findings. *Id.* Plaintiff argues these were not germane reasons to discredit the opinion. Dkt. 12 at 4-8. This

Court disagrees.

According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

Ms. Rymer specifically stated that she was unable to assess plaintiff's work habits, that she completed the form with Ms. Morton, and that the opinion was based on plaintiff's reports. (AR 610.) Based on this, the ALJ reasonably concluded that the opinion was primarily based on plaintiff's subjective complaints. While, as discussed below, the ALJ's credibility assessment will be reevaluated upon remand, the ALJ did provide legally sufficient reasons to discredit plaintiff's credibility. Specifically, the ALJ noted multiple daily activities inconsistent with the severity of plaintiff's reported symptoms. (AR 25); *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) (finding two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living "meet the threshold for transferable work skills."). The ALJ properly discredited the opinion finding it based on plaintiff's incredible self reports.

Plaintiff argues, based on *Ryan v. Comm'r of Soc. Sec. Admin,* that the ALJ did not provide legally sufficient reasons to reject Ms. Rymer's opinion because Ms. Rymer found plaintiff's symptoms to be credible and relied on her own observations to make her opinion. Dkt. 12 at 7; 528 F.3d at 1199-1200. However, unlike in *Ryan*, Ms. Rymer did not provide her own observations to support her opinion. She merely completed a check box form with no additional explanation. (AR 608-10.) Further, as stated previously, the only narrative portion of the evaluation stated that Ms. Rymer was basing her opinion on plaintiff's reports and makes no mention of any observations to support the opinion. As such, the ALJ provided legally sufficient reasons to discredit the opinion as based on plaintiff's incredible subjective reports.

Further, similar to the opinion of Ms. Siridakis, the ALJ found Ms. Rymer's opinion inconsistent with other medical opinions in the record. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (An ALJ may discount lay testimony that "conflicts with medical evidence") (*citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *Baylis v. Barnhart*, 427 F.3d 1244. 1218 (9th Cir. 2005) ("Inconsistency with medical evidence" is a germane reason for discrediting lay testimony) (*citing Lewis, supra*, 236 F.3d at 511). The ALJ did not err in his evaluation of Ms. Rymer's opinion.

<u>Credibility and Knee Impairment</u>

The Court has concluded that the ALJ erred in reviewing some of the medical evidence and that this matter should be reversed and remanded for further consideration. Because the determination of a claimant's credibility relies in part on the assessment of the medical evidence, *See* 20 C.F.R. § 404.1529(c), plaintiff's credibility should be assessed anew following remand of this matter. Plaintiff also argues the ALJ erred in his assessment of plaintiff's limitations caused by her knee impairment. Dkt. 12 at 20-22. This argument is based almost entirely on the

REPORT AND RECOMMENDATION
PAGE - 14

assertion that the ALJ erred in his credibility assessment, which, as stated previously, will be reassessed upon remand.

Step Five Finding

Plaintiff also argues the ALJ erred in finding plaintiff capable of performing other work in the national economy. Dkt. 12 at 22. This argument is based on the premise that the vocational expert testimony used to support the step five finding was given in response to an incomplete hypothetical. The hypothetical was based on the ALJ's assessment of the medical evidence and plaintiff's testimony. As both will be reassessed upon remand, the ALJ should also reevaluate plaintiff's ability to perform other work in the national economy.

**CONCLUSION**

For the reasons set forth above, the Court recommends this matter should be REVERSED and REMANDED for further proceedings.

**DEADLINE FOR OBJECTIONS**

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will

/ / /

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION
PAGE - 15

be ready for consideration by the District Judge on **January 16, 2015**.

DATED this 31st day of December, 2014.

Mary Alice Theiler
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 16